IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-437-FL

| | |
|---|---|
| JUANITA MCLUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| HOME DEPOT U.S.A., INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant's partial motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 18). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant's motion is granted in part and denied in part. Where the parties' scheduling conference activities have been stayed pending resolution of this and prior pleading challenge mounted by defendant, the court's order also lifts stay and initiates these activities, as described more particularly below.

### STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action on October 1, 2019, asserting claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et. seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, as well as state law claims for tortious interference with contract, negligent supervision and retention, and negligent infliction of emotional distress. Plaintiff seeks compensatory and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs.

On December 23, 2019, defendant filed partial motion to dismiss, on grounds that plaintiff

failed to state a claim upon which relief could be granted. Thereafter, the parties filed a consent motion to stay all requirements and deadlines set forth in the court's initial scheduling order, pending decision on motion to dismiss. The court granted motion to stay on January 21, 2020.

On February 19, 2020, plaintiff filed her first amended complaint as of right, rendering moot defendant's motion to dismiss. Defendant filed the instant partial motion to dismiss on March 4, 2020, seeking dismissal of plaintiff's claims for retaliation under Title VII, tortious interference with contract, negligent supervision and retention, and negligent infliction of emotional distress, pursuant to Rule 12(b)(6). Plaintiff responded on March 18, 2020, and defendant replied in support of the motion on April 21, 2020.

### STATEMENT OF FACTS

The facts alleged in plaintiff's amended complaint may be summarized as follows. Defendant hired plaintiff, an African American female, on or about June 26, 1995. (Am. Compl. (DE 17) ¶¶ 6, 11). At all times relevant to amended complaint, plaintiff worked as a specialty assistant manager at defendant's location in Fayetteville, North Carolina. (Id. ¶ 12). While employed by defendant, plaintiff received good performance reviews, and she never received a negative annual performance evaluation. (Id.).

A.  Final Progressive Disciplinary Notice

On November 22, 2017, plaintiff received an "unwarranted wrongful final progressive disciplinary notice", which informed plaintiff that she was being disciplined for allegedly: 1) openly discussing a department supervisor's medical condition, 2) failing to act regarding a threat of violence, and 3) failing to act after becoming aware of a department supervisor's inappropriate sexual comments. (Id. ¶ 17). Plaintiff denies discussing any employee's medical condition. (Id. ¶ 19). Regarding the second allegation, plaintiff indicates that she reported the threat of violence

2

to management, documented the threat in the employee's file, and at all times dealt with the matter pursuant to company policy. (Id. ¶ 20). Regarding the third allegation, plaintiff alleges that she was the target of the sexually-charged comments, she counseled the department supervisor who made the comments, and the department supervisor did not repeat that behavior. (Id. ¶¶ 19-21). Furthermore, plaintiff alleges that Adriana Goodnight ("Goodnight"), a human resources manager; Andrew Meredith ("Meredith"), a regional manager; and Jim Simmons ("Simmons"), a district manager, all of whom are white, failed to properly investigate the allegations underlying plaintiff's final progressive disciplinary notice. (Id. ¶ 27).

Plaintiff alleges that the final progressive disciplinary notice contravened company policy because each allegation happened several months before the notice was issued, and she did not receive an oral or written warning or any counseling or coaching related to the allegations. (Id. ¶¶ 23-24). In contrast, the following managers, who were not African American, received coaching and written or oral warnings prior to receiving a final progressive disciplinary action, and they were not terminated: Stacy Walton, an assistant store manager; Jason Baker, an assistant store manager; John Reczek, a department supervisor; Dave White, an assistant store manager; Barry Roberts, an assistant store manager; Dana Burnette, an assistant store manager; Cory Updike, a department supervisor; Paul Nelson, a department supervisor; John Brewer, an assistant store manager; Eugene Chien, an assistant store manager; and Brian M, an assistant store manager. (Id. ¶ 29).

B.  Plaintiff's Report to the Human Resources Department

On December 18, 2018, plaintiff reported to the human resources department and to store manager, Brad Gustafson ("Gustafson"), that Gustafson was allegedly discriminating against and harassing Rene Cuatt ("Cuatt") a female department supervisor, on the basis of sexual orientation.

(Id. ¶ 13). Approximately two months after plaintiff reported the alleged discrimination and harassment, Gustafson allegedly began retaliating against plaintiff. (Id. ¶ 14). Specifically, Gustafson waited until February 20, 2018, to inform plaintiff that a customer complained about her on January 26, 2018, and that she needed to call the Associate Advice Counsel Group. (Id.). Moreover, on February 21, 2018, Gustafson gave plaintiff an unwarranted disciplinary action, allegedly in retaliation for plaintiff's complaint to the human resources department. (Id. ¶ 15).

C.    Termination and Failure to Promote

Plaintiff requested a promotion every year, and management continuously told her that she would be promoted. (Id. ¶¶ 25-26). However, plaintiff was not promoted, and her peers who were not African American were promoted to store manager. (Id. ¶ 38).

Plaintiff was terminated[1] for a minor violation which allegedly did not occur. (Id. ¶¶ 32, 41). Plaintiff alleges that her peers, who are not African American, were not terminated for this violation. (Id. ¶ 32). Finally, Robin Rankins, a regional human resource director, allegedly failed to investigate plaintiff's termination appeal. (Id. ¶ 28).

## COURT'S DISCUSSION

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does

---

[1] Plaintiff alleges that she was terminated on three different dates: March 22, 2018, (see Am. Compl. (DE 17) ¶ 41); April 19, 2018, (see id. ¶ 11); and April 19, 2019, (see id. ¶ 65).

not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

   1.  Retaliation

Plaintiff alleges defendant retaliated against her for reporting discrimination and harassment to the human resources department.  As relevant here, Title VII's Opposition Clause makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action.  Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

"The requirement of an adverse employment action seeks to differentiate those harms that work a significant detriment on employees from those that are relatively insubstantial or trivial." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015).  For purposes of a Title VII retaliation claim, an adverse employment action is any "materially adverse" action.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  A "materially adverse" action is one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. (internal citations omitted).  "[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it."  Ray v. Int'l Paper Co., 909 F.3d 661,

670 (4th Cir. 2018) (internal quotations and citations omitted).

Turning to the first element, plaintiff engaged in protected activity when she reported discrimination and harassment on the basis of sexual orientation to the human resources department. (Am. Compl. (DE 17) ¶ 13). Defendant argues that Title VII does not afford a cause of action for discrimination based upon sexual orientation, citing Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 143 (4th Cir. 1996), in support. However, following briefing on the instant motion, the United States Supreme Court held that Title VII prohibits discrimination because of sexual orientation. Bostock v. Clayton Cty., Georgia, 140 S. Ct. 1731, 1754 (2020). As such, plaintiff's report to the human resources department constitutes protected activity.

Under the second element, plaintiff's termination constitutes an adverse employment action. Finally, plaintiff plausibly alleges a causal connection between the protected activity and her termination. Defendant argues too much time elapsed between plaintiff's report to the human resources department on December 18, 2017, and her termination on either March 22, 2018, or April 19, 2018, for the two events to be causally linked.[2] Here, the at least three-month interval is on the cusp of what courts consider to be sufficiently long so as to negate the inference of causation. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases from the Tenth and Seventh Circuits for the proposition that three and four month periods, respectively, were too long to establish a causal link); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding two and a half months sufficiently long so as to weaken significantly an inference of causation, but enough to make a prima facie case where employment decisions would likely be made at the end of a school year); but see Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (finding plaintiff proved prima facie causation where three and a half months elapsed

---

[2] Plaintiff alleges she was terminated on both dates. Compare (Am. Compl. (DE 17) ¶ 11) with (id. ¶ 41).

between the protected activity and the adverse employment action).

In cases where "temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). Here, during the intervening period, plaintiff alleges Gustafson waited until February 20, 2018, to inform plaintiff that a customer complained about her on January 26, 2018, and he also gave her an "unwarranted disciplinary action" on February 21, 2018. (Am. Compl. (DE 17) ¶ 14). Accepting these factual allegations as true and drawing all reasonable inferences in plaintiff's favor, Gustafson's acts evince retaliatory animus, and coupled with the relative temporal proximity between the protected activity and plaintiff's termination, allow a plausible inference of causation. See Lettierie, 478 F.3d at 651 (Although seven months elapsed between the protected activity and plaintiff's termination, intervening events, such as a reduction of plaintiff's job responsibilities, evincing retaliatory animus, were sufficient to show a causal link.); Elries v. Denny's, Inc., 179 F. Supp. 2d 590, 599 (D. Md. 2002) ("Elries can establish 'proximity plus' through the throng of written reprimands that began shortly after his initial complaints of discrimination . . . The retaliatory nature of the reprimands, if found, coupled with the relative temporal proximity, establishes a prima facie case of retaliation.") (citations omitted) (emphasis in original).

In sum, plaintiff states a claim for retaliation, and defendant's motion to dismiss must be denied in this part.

2. Tortious Interference with Contract

Plaintiff alleges that defendant tortiously interfered with plaintiff's employment contract by ratifying the actions of its alleged agents, Goodnight, Simmons, and Meredith. However, "North Carolina decisions and federal case law interpreting North Carolina law have held

7

Case 5:19-cv-00437-FL   Document 23   Filed 10/28/20   Page 7 of 11

consistently that a party to a contract cannot tortiously interfere with that contract." Waters v. Collins &Aikman Prods. Co., 208 F. Supp. 2d 593, 595 (W.D.N.C. 2002) (citations omitted); Exclaim Mktg., LLC v. DIRECTV, Inc., No. 5:11-CV-00684-FL, 2012 WL 3023429, at *4 (E.D.N.C. July 24, 2012) ("[A] party to a contract cannot be liable for tortious interference."). Thus, plaintiff's claim for tortious interference with contract against defendant fails, since defendant was a party to plaintiff's employment agreement.

Plaintiff's arguments to the contrary are unpersuasive. First, plaintiff focuses on whether Goodnight, Meredith, and Simmons are considered "non-outsiders" or "outsiders" to the employment contract for qualified immunity purposes. However, plaintiff asserts her tortious interference of contract claim against defendant, not Meredith, Simmons, or Goodnight; therefore, Meredith's, Simmons's, or Goodnight's potential immunity from suit is irrelevant to court's present inquiry.

Next, plaintiff relies on Barker v. Kimberly–Clark Corp., 136 N.C. App. 455, 463–64 (2000), a case where the North Carolina Court of Appeals allowed a claim for tortious interference with contract to go forward against a party to that contract under a theory of ratification of the acts of its agents and supervisors. However, Barker is contrary to established North Carolina case law. See Smith v. Ford Motor Co., 289 N.C. 71, 87 (1976) (defining an "outsider" and "non-outsider", for purposes of a tortious interference with contract claim, as one "who was not a party to the terminated contract"); Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 587 (N.C. Ct. App. 1994) (noting that parties to a contract cannot be liable for interference with the contract). As a result, North Carolina federal courts have considered Barker to be a "decisional aberration" by North Carolina Court of Appeals, and they have declined to follow it. See Waters, 208 F. Supp. 2d at 595-96; Wilkes v. Argueta, No. 1:16CV260, 2017 WL 1215749, at *8 (M.D.N.C. Mar.

31, 2017).

The court finds the line of reasoning in Waters and Wilkes to be persuasive. Indeed, allowing a claim of tortious interference to be maintained against a party to a contract "would fly in the face of well-settled and controlling precedents and common sense. Where a maker interferes with a contract, the cause of action is one for 'breach,' and there simply is no need to supplant, supplement, or duplicate that cause of action." Waters, 208 F. Supp. 2d at 596. As such, plaintiff fails to state a tortious interference claim against defendant, and that claim is dismissed with prejudice.[3]

3. Negligent Supervision and Retention

Plaintiff asserts a negligent supervision and retention claim against defendant, alleging that defendant knew or should have known that its alleged agent, Gustafson, was incompetent.

A claim for negligent supervision and retention is "entirely independent of the employer's liability under the doctrine of respondeat superior." Braswell v. Braswell, 330 N.C. 363, 373 (1991) (emphasis in original). To state a claim, plaintiffs must allege

> (1) the specific negligent act on which the action is founded . . . [;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; [] (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in ' oversight and supervision,' . . . ; and (4) that the injury complained of resulted from the incompetency proved.

Medlin v. Bass, 327 N.C. 587, 590– 91 (1990) (emphasis omitted) (quoting Walters v. Lumber Co., 163 N.C. 536, 541 (1913)); see Pleasants v. Barnes, 221 N.C. 173, 177 (1942). An employer's liability for negligent supervision and retention also extends to an incompetent employee's intentional torts. See, e.g., Wegner v. Delly-Land Delicatessen, Inc., 270 N.C. 62, 65 (1967);

---

[3] Where deficiencies in plaintiff's tortious interference with contract claim against defendant cannot be overcome with further factual support, plaintiff's claim is dismissed with prejudice.

9

Lamb v. Littman, 128 N.C. 361, 363– 64 (1901).

Here, plaintiff fails to plausibly allege negligent supervision and retention because the alleged retaliation, standing alone, is not tortious conduct. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003); Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000); see Waddle v. Sparks, 331 N.C. 73, 87 (1992) ("An essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in plaintiffs' injuries.").

In briefing, plaintiff argues that she "can rely on the tortious interference with a contract claim as alleged in her fourth cause of action" to establish an underlying tort. (Response (DE 20) at 9-10). However, as determined above, plaintiff fails to state a claim tortious interference with contract.[4] Accordingly, that tort cannot provide the basis for her negligent supervision and retention claim.

In sum, plaintiff fails to state a claim for negligent supervision and retention, and this claim is dismissed without prejudice.

4. Negligent Infliction of Emotional Distress

Defendant argues, and plaintiff concedes, that she cannot state a claim for negligent infliction of emotional distress. (See Pl. Mem. (DE 20) at 9). Accordingly, plaintiff's negligent infliction of emotional distress claim is dismissed with prejudice.[5]

---

[4] To the extent plaintiff suggests that she can rely upon tortious interference by other employees, Goodnight, Meredith, and Simmons are not defendants and plaintiff does not assert that claim against them. In addition, plaintiff identifies Gustafson as the allegedly incompetent employee for purposes of her negligent supervision and retention claim, but she does not allege that Gustafson tortiously interfered with her employment contract. (See Am. Compl. (DE 17) ¶¶ 64-80).

[5] In light of plaintiff's concession, deficiencies in her negligent infliction of emotional distress claim are unlikely to be overcome by further factual support, and this claim is dismissed with prejudice.

10

## CONCLUSION

Based on the foregoing, the court ORDERS the following:

1) Defendant's motion to dismiss (DE 18) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for negligent supervision and retention is DISMISSED WITHOUT PREJUDICE. Plaintiff's claims for tortious interference with contract and negligent infliction of emotional distress against defendant are DISMISSED WITH PREJUDICE, where deficiencies cannot be overcome with further factual specificity. Plaintiff's claims under Title VII and § 1981 are ALLOWED to proceed.

2) The court LIFTS stay on pending case activities. Where the court entered initial scheduling order December 31, 2019, the parties are DIRECTED to file joint report and plan, as described in the court's initial scheduling order, proposing discovery limitations and deadlines pertaining to plaintiff's remaining claims, not later than **14 days** after the date of this order. Thereupon, the court will enter such further order as is warranted regarding scheduling.

SO ORDERED, this the 27th day of October, 2020.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge